United States District Court
Southern District of Texas
**ENTERED**
December 31, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DANIEL UDOKA, §
§
Plaintiff, §
§
v. § CIVIL ACTION NO. H-22-4374
§
SHELL PIPELINE COMPANY, L.P., §
§
Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Daniel Udoka ("Plaintiff" or "Udoka"), brings this action for discrimination in employment against defendant, Shell Pipeline Company, L.P., ("Shell" or "Defendant"), based on race, color, and national origin in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and, alternatively, disability.[1] Pending before the court is Shell Pipeline Company L.P.'s Motion for Summary Judgment ("Shell's MSJ") (Docket Entry No. 22). Also pending are Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Udoka's Opposition to Shell's MSJ") (Docket Entry No. 25), and Shell Pipeline Company LP's Reply Memorandum in Further Support of Its Motion for Summary Judgment ("Shell's Reply") (Docket Entry No. 27). After careful consideration, Shell's MSJ will be denied

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1, p. 5 ¶¶ 37-45. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

with respect to Udoka's claims for race, color, and national origin discrimination, and granted with respect to his claim for disability discrimination.

## I. __Undisputed Facts__[2]

Udoka is a black African American from Nigeria.  In August of 2006 Shell hired Udoka to work offshore in the Gulf of Mexico as an Operations Technician on the West Delta 143 Platform ("WD143").

In 2017 Udoka suffered an on-the-job injury that required surgery in February of 2018.  After surgery and physical therapy, Udoka was assigned a light duty desk job onshore.  On August 30, 2018, a physician determined that Udoka was able to return to work without restriction.  After he returned to work, Udoka performed all the duties of his job without accommodation.

During 2018 and 2019 Shell worked with various consultants and internal stakeholders to increase performance and profitability. With these goals in mind, Shell reorganized in 2020.  At that time the WD143 Operations Technicians worked under the supervision of Zachary Byrd ("Byrd") and Allan McFarland ("McFarland").  Byrd and McFarland reported to Nick Stone ("Stone"), the Operations Manager. As part of the 2020 reorganization, Byrd and McFarland were instructed to reduce the number of WD143 Operations Technicians by

---

[2]See "Undisputed Facts" in Shell's MSJ, Docket Entry No. 22, pp. 8-18; and "Factual Background" in Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, pp. 5-13.

two.    The reorganization provided "employees . . . four possible paths: (1) voluntary severance, (2) 'mapped' to their existing position or a new position, (3) apply for and acceptance for an internal position, or (4) separation."[3]  In July of 2020, Byrd and McFarland informed Udoka and Michael Bertrand that they would not be mapped, they needed to apply for open positions, and that if they were unable to find new positions, they would be discharged effective October 30, 2020.    Although Udoka applied for open positions, he was unsuccessful at obtaining a new position and was discharged.

## II.  **<u>Standard of Review</u>**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.    Fed. R. Civ. P. 56.    Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).    The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

---

[3]Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, p. 5 (citing Oral Deposition of Zachary Byrd ("Byrd Deposition"), pp. 21:16-23:4, Docket Entry No. 26-2, pp. 6-7).

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III. **Analysis**

Udoka has asserted claims for race, color, and national origin discrimination in violation of § 1981 and Title VII, and, alternatively, disability discrimination. Udoka alleges that Shell

discriminated by discharging him from his position as Operations Technician in October of 2020. Shell argues that it is entitled to summary judgment because Udoka has failed to cite either direct or circumstantial evidence capable of establishing discrimination; because the legitimate, non-discriminatory reason Udoka was discharged is not pretextual, and because there is no evidentiary basis to support a claim that he was disabled or regarded as disabled.[4]  Udoka responds that Shell's MSJ should be denied because Shell's proffered reason for his discharge lacks sufficient clarity, and because Shell's shifting positions regarding the reasons for his discharge raise fact issues for trial.[5]

**A.    Title VII and § 1981**

1.  <u>Applicable Law</u>

Udoka has asserted claims for race, color, and national origin discrimination pursuant to 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et seq.</u> (Title VII).  Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . .

---

[4]Shell's MSJ, Docket Entry No. 22, pp. 19-27.

[5]Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, pp. 13-25.

42 U.S.C. § 1981(a). Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race or color. 42 U.S.C. § 2000e-2(a)(1). Discrimination claims brought pursuant to § 1981 and Title VII are governed by the same legal and evidentiary standards. See Pegram v. Honeywell, Inc., 361 F.3d 272, 281 n.7 (5th Cir. 2004). See also Body by Cook, Inc. v. State Farm Mutual Automobile Insurance, 869 F.3d 381, 386 (5th Cir. 2017), cert. denied, 138 S. Ct. 1009 (2018) ("The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims."). Because the facts underlying Udoka's § 1981 and Title VII claims are the same, these claims will be analyzed together.

Plaintiff may establish discrimination by using direct evidence or by using the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Direct evidence of discrimination "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004). Udoka has not cited direct evidence of discrimination and does not argue that this is a direct evidence case. Therefore, his claims must by analyzed under the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas, for claims based on circumstantial evidence. See Harville

-6-

v. City of Houston, Mississippi, 945 F.3d 870, 874-75 & n.10 (5th Cir. 2019). The McDonnell Douglas burden-shifting analysis requires the plaintiff to present evidence establishing a prima facie case. 93 S. Ct. at 1824. Once a prima facie case is established, a presumption of discrimination arises, and the burden of production shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action at issue. Id. If the defendant meets this burden of production, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is required to present evidence that the defendant's proffered explanation is not true, but is instead a pretext for discrimination. Id. at 1825.[6]

    2.   <u>Application of the Law to the Undisputed Facts</u>

    (a)  Udoka Establishes a Prima Facie Case

In a typical disparate treatment discharge case, the plaintiff must prove a prima facie case of discrimination by showing that (1) he is a member of a protected group; (2) he was qualified for the job that he held; (3) he was discharged; and (4) after his

---

[6]Title VII also allows plaintiffs to show that the defendant's reason, while true, is only one of the reasons for its conduct, and that another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative). See Comcast Corp. v. National Association of African American-Owned Media, 140 S. Ct. 1009, 1017 (2020) (summarizing history of Title VII's motivating factor test). Udoka has neither alleged nor argued that this is a mixed-motive case.

discharge, his employer filled the position with a person who is not a member of his protected group. McDonnell Douglas, 93 S. Ct. at 1824. Because this case involves choosing employees to discharge with no plan to replace them, the fourth element of the prima facie case requires Udoka to show that after his discharge, others who were not members of his protected groups remained in similar positions. See Vaughn v. Edel, 918 F.2d 517, 521 & n.4 (5th Cir. 1990) (citing McDonnell Douglas, 93 S. Ct. at 1824 & n.13, for recognizing that "the specification . . . of the prima facie proof required [in McDonnell Douglas] is not necessarily applicable in every respect to differing factual situations").

Shell does not dispute that Udoka belongs to a protected group, that he was qualified for the job he held, or that he suffered an adverse employment action when he was discharged. Shell argues that "Udoka cannot prove a prima facie case of race or disability discrimination because a white, non-disabled comparator was also terminated under nearly identical circumstances."[7] Udoka responds that he is able to establish a prima facie case because after he was discharged Eric Voisin ("Voisin"), a similarly situated white comparator, was retained.[8] Because Shell does not dispute that Voisin was similarly situated to Udoka, and

---

[7]Shell's MSJ, Docket Entry No. 22, p. 19.

[8]Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, pp. 15-16.

acknowledges that Voisin and "other white employees with the same job as [Udoka] were retained in the layoff,"[9] Udoka has established a prima facie case.  See Thornbrough v. Columbus and Greenville Railroad Co., 760 F.2d 633, 644 (5th Cir. 1985) (recognizing in an age discrimination case that "what is suspicious in reduction-in-force [("RIF")] cases is that the employer fired a qualified, older employee but retained younger ones," and directing courts to "focus not on why employees, in general, were discharged, . . . but instead on why the plaintiff rather than another employee was discharged").

> (b)    Shell Fails to Cite Evidence of a Legitimate, Non-Discriminatory Reason for Udoka's Discharge with Sufficient Clarity

To meet its burden of production under McDonnell Douglas, Shell must articulate a nondiscriminatory reason with "'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual." Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231 (5th Cir. 2015) (quoting Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004) (quoting Texas Department of Community Affairs v. Burdine, 101 S. Ct. 1089, 1095 (1981))).  The Fifth Circuit has "repeatedly held that a charge of 'poor work performance' is adequate when coupled with specific examples." Id. (citing Feist v. Louisiana, Department of Justice, Office of

_____

[9]Shell's MSJ, Docket Entry No. 22, pp. 20-21.

Attorney General, 730 F.3d 450, 455 (5th Cir. 2013), and Medina v.

Ramsey Steel Co, Inc., 238 F.3d 674, 684-85 (5th Cir. 2001)).

Shell argues that

[t]o determine which of the Operation Technicians would
not be mapped, Byrd and McFarland reviewed the
performance of all of the Techs on the platform. They
looked at the entire Operations Tech staff in making the
decisions, with a specific focus on retaining employees
who were willing to step up and strove to improve their
performance. Byrd and McFarland believed that Plaintiff
had not taken the initiative to spend as much time
improving his performance as other Operations Techs.
Their decision was in no way based on length of service
or mechanical application of performance review ratings.
Due to their perception regarding Plaintiff's willingness
to apply himself to learning new skills, interpersonal
issues, and an unwillingness to improve, the two
determined that [Udoka] was one of the two techs who
should be separated.[10]

Citing Byrd's testimony, Shell asserts that he and McFarland

worked together to determine which two techs would be cut
. . . They made the decision not based solely on past
performance evaluations, but based on what each
Operations Technician "brought what to the table for the
facility . . . Prior-past performances were included in
the discussion, but primarily it was about the
individuals and what they brought to the table as far as
operating in the platform and doing it safely."[11]

Citing Patrick, 394 F.3d at 311, and Alvarado v. Texas

Rangers, 492 F.3d 605 (5th Cir. 2007), Udoka argues that Shell's

reasons for selecting him for termination does not provide

──────────────

[10]Id. at 24.

[11]Id. at 14 (quoting Byrd Deposition, p. 26:10-19, Exhibit C
to Shell's MSJ, Docket Entry No. 22-3, p. 6, and citing Declaration
of Zachary Byrd ("Byrd Declaration"), Exhibit B to Shell's MSJ,
Docket Entry No. 22-2, ¶ 11).

"sufficient clarity" to rebut his prima facie case.[12]   Asserting that "Shell has proffered reasons that are vague and insufficient,"[13] Udoka argues that

> Shell's claims are purely "conclusional" in that Udoka supposedly was not adequately "learning new skills, [had] interpersonal issues, and an unwillingness to improve." This provides no comparison between Udoka and Voisin or even asserts who was better at these conclusional qualities or how one was better than the other.  In a [RIF] case such as this, it is axiomatic that the employer must demonstrate the comparison and contrast between the plaintiff and his comparators in some manner so that it may be tested, evaluated, poked, and prodded. Here we have nothing.[14]

Udoka argues that

> Shell appears to be under the same mistaken belief as the employers in <u>Patrick</u> and <u>Alvarado, i.e.,</u> that it could simply state some conclusional basis for not retaining Udoka even in the face of <u>Udoka having higher performance ratings than Voisin.</u>  There is no evidence in the record comparing Udoka to Voisin on these supposed factors to demonstrate that Voisin was the better performer with regard to these factors.  Instead, Shell just wants the Court to accept it at face value.  Without more, Shell's reason for not retaining Udoka is insufficient as a matter of law to establish a legitimate nondiscriminatory reason for termination and the Court should proceed no further because this failure pretermits summary judgment.[15]

In <u>Patrick,</u> the plaintiff employee sought a promotion, but the defendant employer denied the promotion asserting that the

---

[12]Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, pp. 17-20.

[13]<u>Id.</u> at 18.

[14]<u>Id.</u>

[15]<u>Id.</u> at 19 (emphasis in the original).

plaintiff was not "sufficiently suited" and therefore was not the "best qualified" candidate for promotion.  Patrick, 394 F.3d at 371.  The district court granted the defendant's motion for summary judgment holding that the plaintiff could not overcome the employer's legitimate, nondiscriminatory reason for denying her the promotion.  The Fifth Circuit reversed, holding that the employer's rationale that the plaintiff was not "sufficiently suited" or "best qualified" lacked sufficient clarity because it was "at least as consistent with discriminatory intent as it [was] with nondiscriminatory intent: The employer just might have found the candidate 'not sufficiently suited' because of a protected trait such as age, race, or engaging in protected activity."  Id. (quoting Burdine, 101 S. Ct. at 1095).

In Alvarado a female trooper sued her employer, the Texas Department of Public Safety, for denying her an appointment to the Texas Rangers.  The defendant argued that the plaintiff was not selected for appointment to the Texas Rangers because her interview was subjectively worse than those of her comparators, but failed to specify why the plaintiff received a low interview score.  492 F.3d at 616.  The district court granted the employer's motion for summary judgment.  The Fifth Circuit reversed, holding that the employer had failed to carry its burden of providing a sufficiently detailed nondiscriminatory reason for failing to select the plaintiff for appointment to the Texas Rangers.  Observing that

while an employer may rely on subjective assessments such as
interview quality, the Fifth Circuit held that "[s]uch a reason
will satisfy the employer's burden of production . . . only if the
employer articulates a clear and reasonably specific basis for its
subjective assessment." Id.  The Fifth Circuit explained that

> [w]ithout evidence of the candidates' relative
> qualifications, the mere assertion that [the defendant]
> hired the best qualified candidate is insufficient to
> satisfy its burden of production, as it does not afford
> [the plaintiff] "a full and fair opportunity to
> demonstrate pretext."

Id. at 618.

Citing inter alia Utley v. MCI, Inc., 2008 WL 836419, at * 39
(N.D. Tex. March 24, 2008), aff'd, 320 F. App'x 250 (5th Cir. 2009)
(per curiam), for acknowledging that a defendant employer cannot
simply cite a RIF as a legitimate, nondiscriminatory reason for
discharging a plaintiff, and Inocencio v. Montalvo, 774 F. App'x
824, 831 (5th Cir. 2019) (per curiam), for distinguishing Alvardo
from cases where a defendant employer extensively documented its
procedure for deciding which employees to discharge in a RIF, Shell
replies that unlike the employers in Patrick and Alvarado, it has
provided a lengthy explanation of its reasons for not retaining
Udoka "through Byrd and the contemporaneous documents."[16]  In
support of Udoka's selection as one of two Operations Technicians
discharged in the RIF, Shell reiterates Byrd's testimony regarding

---

[16]Shell's Reply, Docket Entry No. 27, p. 6.

his and McFarland's perception of Udoka's unwillingness to learn new skills, interpersonal issues, and unwillingness to improve.[17] Shell also cites notes that Byrd used during Udoka's termination interview, which include the following observations about Udoka:

- Eager to point out issues around the platform, but rarely offers a resolution. — No ownership.

- Struggles accepting guidance from leadership, argumentative and remains close minded to change.

- Not willing to improve when asked.

- Performance not been up to par with your peers on platform.

- Expresses interest in pursuing more leadership and/or CR operator roles, but never dedicates any real time to learning these roles.

- Less than adequate practices out on the deck — wasteful and rushing through task.

- Complains about others and how they should do more, but never considers whether he is doing enough or not — "this is a mechanic's job, electrician's job, HSSE techs job[."]

- Not completing training after sessions at RTC (HLO or HOA)[.]

- Does not work well with others — Personnel are always concerned they may upset him or offend him; because of this, personnel try to avoid working with him.

- Still focuses on the past and complains about the present.

---

[17]Id. (citing Byrd Declaration, Exhibit B to Shell's MSJ, Docket Entry No. 22-2, ¶ 11; and Byrd Deposition, pp. 26:7-27:9, Exhibit C to Shell's MSJ, Docket Entry No. 22-3, p. 6).

- Stuck in a rut, will not take on new roles and will not let anyone else assume roles he has been doing for years.

- Has never taken personal responsibility to save money for the company.[18]

While an employer's subjective perceptions of an employee's poor work performance may constitute legitimate, non-discriminatory reasons for selecting that employee for discharge when coupled with specific examples, Burton, 798 F.3d at 231, missing from Shell's statement of reasons for selecting Udoka for discharge are specific examples of his poor work performance, contemporaneous documentation of the process pursuant to which Udoka was selected for discharge, and any evidence of how Udoka's job performance compared to that of Voisin or any of the other WD143 Operations Technicians who were retained. Absent such evidence, neither Utley nor Inocencio support Shell's argument that it has cited evidence of a legitimate, nondiscriminatory reason for Udoka's discharge with sufficient clarity to satisfy it's burden under the McDonnell Douglas framework.

In Utley the court acknowledged that while "MCI did not always terminate the lowest ranked employee[,] . . . that fact alone does not support an inference of . . . discrimination." 774 F. App'x at 39. The court distinguished Alvarado by explaining that

[w]hile it is true that MCI could not have simply cited the RIF or its rankings as its nondiscriminatory reasons

_____

[18]Id. (quoting Plaintiff's Exhibit 5, Docket Entry No. 25-5, p. 2).

-15-

> for terminating Plaintiffs, MCI has gone much farther in
> this case.  With respect to each plaintiff, MCI has
> provided a sufficiently detailed explanation as to why
> each individual plaintiff received the ranking that he or
> she did, and ultimately how that factored into the
> termination.

Id.  For example, with respect to Utley, MCI argued that the

discharge decision came down to two employees serving a secondary

market: Utley and Walker.  Walker ranked fifth and Utley ranked

seventh out of the ten members of their team.  MCI "thought Walker

was better qualified to perform all of the necessary job functions

of the Waco site, some of which required special security

clearances to work at military sites that Utley did not have."  Id.

In Inocencio the court distinguished Alvarado by stating that

> [t]he top four candidates, including Inocencio, were
> interviewed and scored by an unbiased panel based upon
> neutral performance-related factors.  Distinguishable
> from Alvarado, the panel's procedure is extensively
> documented in the summary judgment record, which includes
> records of the job description, panel questions, the
> master score sheet, interviewee sheets, and
> comments/observations from the panelists.

774 F. App'x at 831.  Shell's selection of Udoka for discharge is

not supported by evidence comparable to that cited in Utley or

Inocencio.  To the contrary, Shell's selection of Udoka for

discharge is neither extensively documented by records evidencing

the process used to select the employees who would be discharged,

nor is it supported by evidence of how his "willingness to apply

himself to learning new skills, interpersonal issues, and

unwillingness to improve"[19] compared to Voisin or any of the WD143 Operations Technician who were retained.    The court concludes, therefore, that Shell has failed to satisfy its burden to produce evidence of a legitimate, non-discriminatory reason for Udoka's discharge with sufficient clarity to distinguish this case from Patrick and Alvarado.

### (c)    Udoka Raises a Fact Issue as to Pretext

Alternatively, the court concludes that even if Shell has met its burden of producing a legitimate, non-discriminatory reason for Udoka's discharge with sufficient clarity to satisfy its McDonnell Douglas burden, Udoka has presented enough evidence that Shell's proffered reason is false or unworthy of credence to raise a genuine issue of material fact for trial as to whether Shell's stated reason for his discharge is a pretext for discrimination. Under the McDonnell Douglas burden-shifting framework, once a defendant has produced evidence that a RIF justified the plaintiff's discharge, the plaintiff must present substantial evidence that the defendant's legitimate, non-discriminatory reason for discharging him was pretextual.    See Gosby v. Apache Industrial Services, Inc., 30 F.4th 523, 527 (5th Cir. 2022) (citing Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 480 (5th Cir. 2016), and Burton, 798 F.3d at 233).    "Evidence is substantial if

_____

[19]Shell's MSJ, Docket Entry No. 22, p. 24.

it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003). Udoka may meet this burden by presenting "evidence of disparate treatment or by showing that [Shell]'s proffered explanation is false or unworthy of credence." Gosby, 30 F.4th at 527 (quoting Laxton, 333 F.3d at 578). Although Udoka does not challenge the reorganization or RIF as pretextual,[20] he argues that Shell's proffered explanation for his discharge is false or unworthy of credence.[21] "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578. "Evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003) (citing Reeves, 120 S. Ct. at 2108-2109). "Thus, [Udoka] can survive summary judgment by producing evidence that creates a jury issue as to the . . . falsity of the employer's legitimate nondiscriminatory explanation." Id. "[E]vidence must be of sufficient 'nature,

---

[20]Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, p. 17 ("Udoka does not dispute that Shell underwent a reorganization.").

[21]Id. at 20-25.

-18-

extent, and quality' to permit a jury to reasonably infer discrimination." Owens v. Circassia Pharmaceuticals, Inc., 33 F.4th 814, 826 (5th Cir. 2022).

Shell argues that Udoka is unable to cite evidence capable of establishing that its proffered reason for discharging him is false or unworthy of credence.[22]  In pretext cases it is not enough that the employer was wrong about the underlying facts that motivated the adverse employment action.  The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true.  Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 379 (5th Cir. 2010).  The plaintiff has the ultimate burden of showing a genuine and material factual dispute over whether the defendant discriminated against him because of his membership in the protected group.  See Reeves, 120 S. Ct. at 2106.

Udoka argues that Shell's stated reasons for his discharge, are false and unworthy of credence because they are contradicted both by the position statement that Shell submitted to the Equal Employment Opportunity Commission ("EEOC"), and by his 2018 and 2019 performance reviews.[23]  While Shell now argues that Udoka was selected for discharge during the reorganization because of his "[un]willingness to apply himself to learning new skills,

---

[22]Shell's MSJ, Docket Entry No. 22, pp. 25-27.  See also Shell's Reply, Docket Entry No.27, pp. 3-10.

[23]Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, pp. 20-25.

interpersonal issues, and unwillingness to improve,"[24] in the position statement submitted to the EEOC, Shell stated that during the conversation that his supervisors had with him in July of 2020, Udoka was

> informed . . . that he was impacted by the Midstream reorganization due to his comparative performance to other Operations Technicians. Concerns about Mr. Udoka's performance shared with him during this meeting include consistently not following normal ways of working procedures and wasteful use of platform materials.[25]

The position statement made to the EEOC does not mention the reasons for which Shell now argues that Udoka was selected for discharge, i.e., Udoka's alleged unwillingness to apply himself to learning new skills, interpersonal issues, and unwillingness to improve. Moreover, Udoka's performance reviews from 2018 and 2019 contradict the reasons for his discharged stated in both Shell's MSJ and Shell's position statement to the EEOC.

Shell's MSJ argues that Udoka was selected for discharge because of his unwillingness to apply himself to learning new skills, interpersonal issues, and unwillingness to improve. These reasons are contradicted by Udoka's 2018 written performance review, in which Byrd stated that Udoka "has a great work ethic and a good attitude," "[he] is respectful and courteous to others," and he "has recently enrolled in College to further his education, this

---

[24]Shell's MSJ, Docket Entry No. 22, p. 24.

[25]Letter to EEOC Investigator, Exhibit 4 to Udoka's Opposition to Shell's MSJ, Docket Entry No. 25-4, p. 5 ¶ IV.

shows that he has no[] intention of settling and he is constantly trying to improve."[26]  These reasons are also contradicted by Udoka's 2019 written performance review, in which Byrd stated that Udoka "is a leader out on the deck as well as someone who is always looking to do the right thing.  He is well like[d] by the rest of the platform personnel and is always making people laugh," "Daniel has made improvements in his knowledge of SAP, developing SOPs," and he "did a good job completing all his required trainings before the end of the year as well as attending one non-required training."[27]  Shell's contemporaneous records, therefore, contradict Shell's argument that Udoka was discharged because of his unwillingness to apply himself to learning new skills, interpersonal issues, and unwillingness to improve.

Shell told the EEOC that Udoka "was impacted by the Midstream reorganization due to his comparative performance to other Operations Technicians,"[28] but Shell's performance records for 2018 ranked Udoka 0.9, slightly ahead of Voisin, who was ranked 0.8, and the same as Bertrand and Godrey Mizell who were also ranked 0.9.[29]

---

[26]Exhibit 3 to Udoka's Opposition to Shell's MSJ, Docket Entry No. 25-3, pp. 2-3.

[27]Id. at 2.

[28]Letter to EEOC Investigator, Exhibit 4 to Udoka's Opposition to Shell's MSJ, Docket Entry No. 25-4, p. 5 ¶ IV.

[29]Shell's MSJ, Docket Entry No. 22, p. 15 & n. 63 (citing Byrd Declaration, Exhibit B, Docket Entry No. 22-2, pp. 5-6 ¶ 13).

Shell's performance records for 2019 ranked Udoka and all of the other WD143 Operations Technicians the same, *i.e.,* "Strong."[30] Shell told the EEOC that Udoka was discharged because he was "consistently not following normal ways of working procedures and wasteful use of platform materials,"[31] but these statements are contradicted by Shell's written reviews of Udoka's performance for 2018 and 2019.  For example, in 2018 Byrd wrote that Udoka "being one of the longer-term personnel her[e] at WD brings a lot to the table when it comes to the platform unique operating systems.  He helped to capture multiple risk[s] prior to them becoming a problem."[32]  In 2019, Byrd wrote that Udoka "has done a tremendous job over the years with our NPDES.  Recently we had a visit from the USCG, and I truly believe it was because of his efforts we had no[] finding in this area."[33]  Byrd also wrote that "WD has a lot coming its way in the next few years — large projects and new production.  Having guys like Daniel on the platform only increases our chances [of] success!"[34]  His 2019 performance review also states that Udoka

---

[30]<u>Id.</u>

[31]Letter to EEOC Investigator, Exhibit 4 to Udoka's Opposition to Shell's MSJ, Docket Entry No. 25-4, p. 5 ¶ IV.

[32]Exhibit 3 to Udoka's Opposition to Shell's MSJ, Docket Entry No. 25-3, pp. 2-3.

[33]<u>Id.</u> at 2.

[34]<u>Id.</u>

> takes time to inspect the platform projects and intervene with any At Risk Behaviors.  These walks are vital to WD operations. . .  This year we may have a Safety Team for the GOM Region, if so, I'd like to see Daniel join the team and bring his experiences to the table. . . His years of knowledge and experiences can play a key role in stopping accidents before they happen.[35]

Shell's contemporaneous records, therefore, contradict its statement to the EEOC that Udoka was discharged "due to his comparative performance to other Operations Technicians" and because he was "consistently not following normal ways of working procedures and wasteful use of platform materials."[36]

The inconsistencies between the reasons for Udoka's discharge argued in Shell's MSJ and the reasons asserted in the position statement submitted to the EEOC, coupled with the contradictions between those reasons and Udoka's written performance reviews for 2018 and 2019, cast doubt on the truthfulness of Shell's stated reasons for his discharge.  See Caldwell v. KHOU-TV, 850 F.3d 237, 242 (5th Cir. 2017) ("An employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations."). See also Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412-13 & n.11 (5th Cir. 2007) ("an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual"). Moreover, there is no evidence

---

[35] Id.

[36] Id.

-23-

that Shell evaluated both retained and discharged Operations Technicians against any fixed criteria. Indeed, there is no documentary evidence of assessments for any of the WD143 Operations Technicians who were retained during the reorganization. Although the lack of evidence of a meaningful assessment process cannot alone prove that Shell discriminated against Udoka, "[t]he inconsistent explanations and the absence of clear criteria . . . is evidence tending to show that [Shell]'s 'proffered explanation is false of "unworthy of credence."'" Gosby, 30 F. 4th at 528 (citing Delaval, 824 F.3d at 480 (quoting Laxton, 333 F.3d at 578)). "At this point that is enough. . . [Udoka] has presented evidence sufficient to rebut [Shell]'s nondiscriminatory reason for termination and show that a fact question exists as to whether that explanation is pretextual." Id.

## B.   Disability Discrimination

As an alternative to his claims for race, color, and national origin discrimination, Udoka has asserted a claim for disability discrimination under an unidentified law. Udoka does not cite the law on which his claim for disability discrimination rests.[37] Treating it as having been asserted under the Americans with

_____

[37]See Plaintiff's Original Complaint, Docket Entry No. 1, p. 5 ¶¶ 43-45.

Disabilities Act ("ADA"), 42 U.S.C. § 12111, <u>et seq.</u> ("ADA"),[38] Shell seeks summary judgment arguing <u>inter alia</u> that Udoka is unable to show that when he was discharged, he was disabled or regarded as disabled.[39]  Udoka has not responded to Shell's argument that he was neither disabled nor regarded as disabled when he was discharged.[40]  Local Rule 7.4 states that "[f]ailure to respond to a motion will be taken as a representation of no opposition."  But failure to respond is not itself grounds for granting Shell's MSJ. <u>See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,</u> 702 F.3d 794, 806 (5th Cir. 2012).  The court must assess the merits of the motion to determine whether summary judgment is warranted.  <u>See John v. State of Louisiana Board of Trustees for State Colleges & Universities,</u> 757 F.2d 698, 709 (5th Cir. 1985) ("[A]lthough we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation.").  <u>See also Ramsay v. Bailey,</u> 531 F.2d 706, 709 n. 2 (5th Cir. 1976)(per curiam), <u>cert. denied,</u> 97 S. Ct. 1139 (1977) (holding

---

[38]Shell's MSJ, Docket Entry No. 22, p. 7 & n. 1.

[39]<u>Id.</u> at 21.

[40]<u>See</u> Udoka's Opposition to Shell's MSJ, Docket Entry No. 25, pp. 13-25 (arguing only that the court should deny Shell's MSJ with respect to his discrimination claims based on race, color, and national origin).

that a proper sanction for failure to respond to a dispositive motion is for the court to decide the motion on the papers before it).

    1.   Applicable Law

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment.'" Rodriguez v. ConAgra Grocery Products Co., 436 F.3d 468, 474 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). Plaintiff may establish an ADA discrimination claim by using direct evidence or by using the indirect method of proof set forth in McDonnell Douglas, 93 S. Ct. at 1817.  See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999).  Under the McDonnell Douglas framework plaintiff may establish a prima facie case of disability discrimination by showing "'(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability.'"  E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014).

2.   <u>Application of the Law to the Undisputed Facts</u>

Undisputed evidence establishes that Udoka suffered an on-the-job injury that required surgery in early 2018.  After surgery and physical therapy, Udoka was temporarily assigned a light duty desk job onshore.  in August of 2018 a physician determined that Udoka was able to return to work without restriction.  After he returned to work, Udoka performed his job without accommodation until he was discharged in October of 2020.[41]  Because undisputed evidence shows that after having surgery in early 2018, Udoka was able to return to work and perform all the duties of his job without accommodation, the evidence establishes that Shell is entitled to summary judgment on his claim for disability discrimination because the summary judgment record lacks evidence from which a reasonable jury could find that when Shell discharged Udoka, Udoka was disabled or regarded as disabled.

## IV.  **Conclusions and Order**

For the reasons stated in § III.A, above, the court concludes that Shell has failed to establish that it is entitled to judgment as a matter of law on Udoka's claims for race, color, or national original discrimination, in violation of 42 U.S.C. § 1981, or Title VII.  Therefore, Shell's motion for summary judgment on

---

[41]<u>See</u> Shell's MSJ, Docket Entry No. 22, pp. 11-13 (citing <u>inter alia</u> Oral and VideoTaped Deposition of Daniel Udoka, Docket Entry No. 26-1, pp. 49:10-58:13; 73:8-79:20).

Udoka's claims for discrimination based on race, color, and national origin is **DENIED.**

For the reasons stated in § III.B, above, the court concludes that Shell has established that it is entitled to judgment as a matter of law on Udoka's claim for disability discrimination. Therefore, Shell's motion for summary judgment on Udoka's claim for discrimination based on disability is **GRANTED.**

Shell's Motion for Summary Judgment, Docket Entry No. 22, is therefore **GRANTED in PART and DENIED in PART.**

**SIGNED** at Houston, Texas, on this 31st day of December, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE